UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH CIAMPI,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>CITY OF PALO ALTO, a government entity; LYNNE JOHNSON, an individual; CHIEF DENNIS BURNS, an individual; OFFICER KELLY BURGER, an individual; OFFICER MANUEL TEMORES, an individual; OFFICER APRIL WAGNER, an individual; AGENT DAN RYAN; SERGEANT NATASHA POWERS, individual,<br><br>　　　　　　Defendants. | Case No.: 09-CV-02655-LHK<br><br>ORDER DENYING MOTION REQUESTING APPROPRIATE ACTION REGARDING VIOLATIONS OF THE LAW AND RULES COMMITTED BY ATTORNEY STEVEN SHERMAN |

Plaintiff Joseph Ciampi has filed a Motion Requesting Appropriate Action Regarding Violations of the Law and Rules Committed by Attorney Steven Sherman. Plaintiff alleges that by his actions in this proceeding, Steven Sherman, counsel for Defendants, has violated various California state bar rules, as well as civil and criminal laws. The Court construed Plaintiff's request as a motion for sanctions and held oral argument on June 30, 2011. Although Mr. Sherman has made errors in the course of discovery and motion practice, the Court is not persuaded, based on the evidence and arguments submitted, that Mr. Sherman engaged in misconduct. Accordingly, the Court DENIES Plaintiff's motion.

1

Case No.: 09-CV-02655-LHK
ORDER DENYING MOTION REQUESTING APPROPRIATE ACTION

## I. Background

On June 15, 2009, Plaintiff Joseph Ciampi filed a Complaint against the City of Palo Alto and seven current and former employees of the Palo Alto Police Department, alleging civil rights violations and state common law claims. Plaintiff's claims arise out of an incident that occurred on March 15, 2008, in which officers of the Palo Alto Police Department used Taser guns to subdue and arrest Plaintiff Joseph Ciampi. The incident was recorded by cameras mounted on the Taser guns used by Defendants Manuel Temores and Kelly Burger, as well as the Mobile Audio Video System (MAV) devices located on Temores's and Burger's patrol cars. These recordings have been the subject of several motions to compel. Plaintiff now alleges that Steven Sherman, counsel for Defendants, has violated various California state bar rules, as well as civil and criminal laws, by falsifying evidence and making misrepresentations during the course of discovery and motion practice in this case. Mr. Sherman denies Plaintiff's allegations of misconduct.

## II. Discussion

Plaintiff's motion and supplemental motion contain 13 separate allegations against Mr. Sherman. Plaintiff alleges that Mr. Sherman has violated California Business & Professions Code § 6068(d) (attorney's duty never to mislead a judge by false statements), § 6068(f) (advancing facts prejudicial to the honor or reputation of a party), § 6106 (attorney dishonesty or moral turpitude), § 6128(a) (deceit or collusion by an attorney), and California Rule of Professional Conduct 5-200 (prohibiting attorneys from seeking to mislead the judge). Accordingly, Plaintiff requests that the Court impose disciplinary sanctions pursuant to Civil Local Rule 11-6(a) or Federal Rule of Civil Procedure 37(b). Civil Local Rule 11-6(a) provides that "[i]n the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may" refer the matter to the disciplinary authority of the state where the attorney is licensed to practice, initiate civil or criminal contempt proceedings, or impose other appropriate sanctions. Federal Rule of Civil Procedure 37(b) provides for the imposition of sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The Court will evaluate each of Plaintiff's allegations in turn.

**A. Claim 1**

In his first allegation, Plaintiff contends that Mr. Sherman has tampered with the serial number on Taser camera V07-065373. In support of this allegation, Plaintiff submits two photographs, allegedly taken on October 20, 2010, and December 17, 2010, of a sticker on the V07-065373 Taser camera. *See* Decl. of Joseph Ciampi ISO Pl.'s Notice Requesting Appropriate Action ("Ciampi Decl.") Ex. 603, ECF No. 143. In addition to what appears to a warning label, the sticker contains a serial number and bar code. *See id.* In the December 17, 2010 photo, part of the serial number and bar code appears to be rubbed off. *See id.* Plaintiff also submits a short video documenting a portion of the December 17, 2010 inspection of the Taser guns and Taser cameras at the Palo Alto police station. *Id.* Ex. 600. On the video, Mr. Sherman appears to state, "We're going to have to put this [the Taser camera] into an envelope because we're messing up the numbers. Some of it could be my fault from sticking this sticker on the wrong side all day long and pulling it off, but we may be pulling off the number, the ink on it." *Id.* Ex. 600 at 2:42-56.

It seems that a packing slip had been taped to the Taser camera, and Mr. Sherman had repeatedly pulled the slip off and stuck it back on during the inspection of the camera on December 17, 2010. On that day, Mr. Sherman speculated that the removal of the slip, or possibly the repeated handling of the camera, may have rubbed some of the ink off the sticker. At the motion hearing, Lieutenant Sandra Brown, of the Palo Alto Police Department, also stated that the V07-065373 Taser, which Defendants believe was not involved in the March 15, 2008 incident,[1] had been in use prior to the December 17, 2010 inspection, and that the serial number may have rubbed off in the course of ordinary police work.

Mr. Sherman does not deny that the serial number on Taser camera V07-065373 appears to have lightened or rubbed off somewhat. However, he states that he did not intentionally tamper

---

[1] Defendants contend that the V07-065373 Taser camera was not used in the March 15, 2008 incident, and they have provided Plaintiff with the recordings from two other cameras that they claim were used by officers Burger and Temores during the incident. As the recordings from those two cameras depict the March 15, 2008 incident, and Plaintiff has not claimed that a third Taser gun was involved, it seems unlikely that the V07-065373 Taser camera has any relation to Plaintiff's case. Out of caution, however, in the Interim Order issued on July 1, 2011, the Court ordered Defendants to determine whether the V07-065373 Taser camera contains any recordings from March 15, 2008, and, if so, to provide those recordings to Plaintiff. The Court also ordered that Defendants immediately place the V07-065373 Taser camera into evidence.

3

Case No.: 09-CV-02655-LHK
ORDER DENYING MOTION REQUESTING APPROPRIATE ACTION

1    with the serial number. The Court agrees that, based on Mr. Sherman's December 17, 2010

2    statement, it appears that once Mr. Sherman noticed that the serial number was rubbing off, he took

3    measures to mitigate the problem. This suggests that rather than tampering with the serial number,

4    Mr. Sherman actually attempted to ensure its integrity. Moreover, both Mr. Sherman and Plaintiff

5    agree that the serial numbers are programmed into the Taser cameras, such that even if the serial

6    number is rubbed off the sticker, it is still possible to identify the Taser cameras with accuracy. For

7    these reasons, the Court finds no merit to Plaintiff's claim that Mr. Sherman sought to mislead the

8    Court or tamper with evidence by rubbing off the serial number from Taser camera V07-065373.

9    However, the Court advises Mr. Sherman and Defendants that the V07-065373 Taser camera must

10   remain in evidence and be treated with care for the remainder of this case. If the Court learns that

11   the V07-065373 Taser camera has been reissued for use by the police or has not been properly

12   secured in evidence, the Court will consider appropriate sanctions.

13   **B.  Claim 2**

14   In his second allegation, Plaintiff states that he requested a copy of Defendant Temores'

15   MAV recording with a date of last modification of March 15, 2008, the date of the Taser incident.

16   Plaintiff contends that Mr. Sherman responded to this request by providing a recording with a date

17   of last modification of September 3, 2010, but represented in the discovery response that the

18   recording provided had a date of last modification of March 15, 2008. Plaintiff claims that Mr.

19   Sherman intentionally attempted to deceive Plaintiff regarding the date of last modification, that

20   this deception continued through the discovery process, and that it resulted in a motion to compel.

21   It seems that when Mr. Sherman originally provided copies of the recording to Plaintiff, he

22   produced them in a file format which records a new "date of last modification" each time a copy is

23   made. However, in order to obtain a copy with the original March 15, 2008 date of last

24   modification, Plaintiff must receive a bit-for-bit replication of the original file, in its original file

25   format. *See* Order by Judge Grewal Granting Mot. to Compel, ECF No. 115. It appears that Mr.

26   Sherman did not initially produce the MAV recording in its original format because he believed

27   that Mr. Ciampi would not be able to view the recording in that format. However, pursuant to

28   Magistrate Judge Grewal's April 21, 2011 order, Defendants have now produced the MAV

4

Case No.: 09-CV-02655-LHK
ORDER DENYING MOTION REQUESTING APPROPRIATE ACTION

recording to Plaintiff in its original format, using a Windows file copying system to create a bit-for-bit replication of the original file.

It does appear that when Mr. Sherman initially responded to Plaintiff's discovery requests, he represented that the MAV recording produced had a date of last modification of March 15, 2008, and that this representation was incorrect. At the hearing, Mr. Sherman stated that this error occurred because he misunderstood what Plaintiff meant by his request for a recording with a last modification date of March 15, 2008. It also appears that Mr. Sherman and Defendants may not have entirely understood the recording technology at that time. The Court is not convinced that the erroneous representation in the original discovery response was made by Mr. Sherman in an intentional effort to deceive Plaintiff or the Court. The parties have litigated the issue through motions to compel, and it appears that Plaintiff now has the MAV recordings that he seeks**.** Accordingly, this claim does not provide grounds for sanctions. However, Mr. Sherman and Defendants now have a better understanding of both the technology at issue and the information Plaintiff seeks. Thus, there is little justification for future errors of this nature, and the Court will not look favorably on such errors, should they recur.

### C. Claim 3

Plaintiff's third allegation similarly claims that Mr. Sherman made misrepresentations in stating that the watermark on the MAV recordings was proprietary in nature, and therefore Defendants could not produce to Plaintiff MAV recordings containing the watermark. In his response, Mr. Sherman explains that he did not intend to suggest that the watermark itself was proprietary, but rather that the watermark can only be read or verified using proprietary software. This does appear to be the nature of Mr. Sherman's statement, only part of which was cited by Plaintiff in his brief. Mr. Sherman's statement reads:

> At this time, plaintiff's request to receive actual 'original MAV recordings containing the digital watermark' infringes on Kustom Signal's proprietary software and MAV system created for police use. *Any reading of the data that is encrypted so that the watermark can be read*, has been created by software engineers for proprietary licensing; *including the watermark software to read the watermark encryption*.

5

Case No.: 09-CV-02655-LHK
ORDER DENYING MOTION REQUESTING APPROPRIATE ACTION

1  Def.'s Br. re: Dispute over Obtaining Original MAV Recordings Containing Digital Watermark at
2  2, ECF No. 65 (emphasis added). While Plaintiff claims that he has been able to watch the MAV
3  recordings containing the watermark, he does not contend that he has been able to read or verify
4  the watermark without access to proprietary software. Accordingly, it does not appear that Mr.
5  Sherman misrepresented the proprietary nature of the software used to read the watermark and
6  verify the authenticity of the watermarked recordings. Because Plaintiff does not have access to
7  the proprietary software required to verify or read the watermarks in the MAV recordings produced
8  to him, the Court has ordered Defendants to allow Plaintiff to view and verify the watermarks
9  using the proprietary software at the Palo Alto Police Department. *See* Interim Order Regarding
10 Pl.'s Mot. to Take Appropriate Action at 2, ECF No. 166.

### D. Claim 4

In his fourth allegation, Plaintiff contends that Mr. Sherman attempted to mislead the Court by submitting Taser gun activation data that is inconsistent with the data later obtained by Plaintiff through a direct download from the Taser gun data ports. On September 3, 2010, Defendants produced to Plaintiff "Weapon Summaries" containing the firing data for the Tasers used by Defendants Temores and Burger. This data was downloaded on August 31, 2010. Subsequently, on December 17, 2010, Plaintiff downloaded the Taser activation data directly from Temores's and Burger's Taser guns. The Court has compared the two sets of Taser activation data and finds that Plaintiff is correct that there are some differences between the two sets of data. The August 31, 2010 data produced by Defendants appears to have been produced in a somewhat different format and contains firing data from June 27, 2007 to June or August 2008, depending on the Taser gun. *See* Clarification Regarding Discovery Requests, Exs. 175, 177-79, ECF No. 109-1. In contrast, the December 17, 2010 data-port downloads contain firing data only from 2008, and appear to have omitted a few firings from the first few days of January 2008. *See id.* Exs. 175, 177. However, for the firing dates that overlap, the data contained in each set of data is the same. Most importantly, the firing data associated with the March 15, 2008 incident is identical in both sets of Taser gun activation data. Thus, while it appears that the "Weapon Summaries" are produced in a slightly different format and contain a different range of dates than the direct data-port downloads, there are

no material differences between the two sets of data. Accordingly, the Court finds no merit to Plaintiff's claim that Mr. Sherman intentionally attempted to mislead the Court by submitting the "Weapon Summaries" downloaded on August 31, 2010 in support of Defendants' motion for summary judgment.

### E. Claim 5

Plaintiff's fifth allegation addressed immunity arguments made by Mr. Sherman in Defendants' motion for summary judgment. Due to the Court's ruling on the motion for summary judgment, Plaintiff has withdrawn this allegation.

### F. Claim 6

In his sixth allegation, Plaintiff claims that Mr. Sherman made a false and defamatory statement about Plaintiff by stating in Defendants' reply summary judgment brief the following: "Nor does Plaintiff refute the existence of pock marks on his person, and in fact admits their existence." Def.'s Reply to Pl.'s Opp'n to Mot. for Summary Judgment at 4, ECF No. 141. While Plaintiff has admitted that he has a skin condition, Plaintiff has not admitted that his skin condition results in "pock marks" that resemble the scarring or pitting associated with use of heroine or other intravenous drugs. The Court does not think that Mr. Sherman intended to suggest that Plaintiff had admitted to drug use or to the existence of marks on his skin that might be suggestive of drug use. Rather, Mr. Sherman acknowledges that Plaintiff does not use intravenous drugs and was attempting to argue that the police officers made a reasonable mistake in believing that he did. Thus, through this statement, Mr. Sherman simply intended to point out that Plaintiff admitted to some type of sores or scars on Plaintiff's arms. The Court was not misled by Mr. Sherman's use of the term "pock marks," which can carry many different meanings, many of them not associated with drug use at all. At the hearing, Mr. Sherman apologized for any offense that he may have caused by characterizing Plaintiff's skin condition as "pock marks." Accordingly, while the Court cautions Mr. Sherman to use care in characterizing any of Plaintiff's statements or admissions, the Court does not find Mr. Sherman's statement to be misleading or defamatory. In the future, however, Mr. Sherman must not use the term "pock marks" to refer to Plaintiff's skin condition.

**G. Claim 7**

In his seventh allegation, Plaintiff contends that Mr. Sherman made a false and defamatory statement about Plaintiff by implying that Plaintiff violated California Penal Code § 834(a) during the March 15, 2008 incident. In the reply brief, Mr. Sherman states:

> Plaintiff concludes his Fourth Amendment analysis with a perfunctory argument that, because his detention was illegal, any force employed to effect it was by definition excessive. (See Pl.'s Mem. at 12.)
> Not so! See Cal. Penal Code § 834(a) (West 2008) "If a person has knowledge . . . that he is being arrested by a peace officer, it is the duty of such person to refrain from using force . . . to resist such arrest."

Def.'s Reply to Pl.'s Opp'n to Mot. for Summary Judgment at 4, ECF No. 141. As above, Mr. Sherman is merely attempting to make a legal argument in response to Plaintiff's legal argument. Mr. Sherman's reply brief does not assert that Plaintiff violated California Penal Code § 834(a). Instead, Mr. Sherman simply uses § 834(a) to refute Plaintiff's claim that if there were no legal basis for his arrest, any use of force to achieve that arrest would be unlawful. It is the nature of litigation that each party will make legal arguments with which the other party disagrees, but the parties are entitled to make such arguments. Thus, the Court cannot find anything false or defamatory about Mr. Sherman's statement.

**H. Claim 8**

In his eighth allegation, Plaintiff claims that Mr. Sherman provided to the Court an incomplete recording of the 911 call and radio communications between Defendants and the Palo Alto Dispatch. The Court has carefully reviewed the recordings submitted by Plaintiff and by Mr. Sherman on behalf of Defendants, and has found them to be identical. Both recordings are 13 minutes and 25 seconds long. *See* Decl. of Steven A. Sherman ISO Mot. for Summary Judgment, Ex. 18; Decl. of Joseph Ciampi ISO Opposition to Mot. for Summary Judgment, Ex. 551. Both commence with a 911 call made by Ken Alsman that ends at about the 3:06-minute mark. *Id.* Both recordings run from approximately 9:25 a.m. to 11:01 a.m. on March 15, 2008. *Id.* Accordingly, Mr. Sherman did not attempt to mislead the Court regarding the 911 call.

It appears, however, that the copy of Exhibit 18 that Plaintiff received from Defendants with their summary judgment motion contained an incomplete recording of the 911 call. In the

8

future, if Plaintiff notices that one of Defendants' exhibits appears to be incomplete, he should notify Defendants immediately in order to obtain a complete and accurate exhibit and so that Defendants can ensure that the exhibits submitted to the Court are complete. The Court understands that Plaintiff already has a complete recording of the 911 call and radio communications in his possession. However, in order to ensure that Plaintiff has a complete copy of the summary judgment exhibits for his records, **Mr. Sherman is ordered to produce to Plaintiff a complete and accurate copy of Exhibit 18 to Defendants' motion for summary judgment by July 29, 2011**.

Plaintiff also contends that Mr. Sherman submitted a falsified Computer Automated Dispatch ("CAD") report in support of the summary judgment motion. Plaintiff submits no evidence that the CAD report was falsified, other than the fact that the CAD report states that Mr. Alsman reported that Plaintiff makes his wife and young daughter uncomfortable by the way he watches them. *See* Decl. of Steven A. Sherman ISO Mot. for Summary Judgment, Ex. 3. The Court has already acknowledged that Mr. Alsman did not state that Plaintiff watched his wife or daughter in a way that made them uncomfortable, and the Court did not rely on this misinformation in its summary judgment order. *See* Order Granting in Part and Denying in Part Defs.' Mot. for Summary Judgment at 12, ECF No. 155. It seems, however, that this erroneous information was somehow entered into the CAD report. While this is unfortunate, it simply does not suggest or prove that Mr. Sherman falsified the CAD report.

### I. Claim 9

In his ninth allegation, Plaintiff claims that Mr. Sherman made a speculative and false statement by stating in a Joint Case Management Statement: "Plaintiff wants there to be a conspiracy and he therefore interprets all information in a manner to support such. He is misinformed." Joint Case Management Statement at 4, Apr. 14, 2011, ECF No. 142. Plaintiff then suggests that Mr. Sherman is involved in a conspiracy with Defendants to suppress evidence and obstruct justice. The Court again asks Mr. Sherman to use caution and respect when speaking of Plaintiff or characterizing his positions. Nevertheless, the Court agrees with Mr. Sherman that his statement was neither defamatory nor misleading to the Court. Plaintiff has alleged various

1    conspiracies with regard to the March 15, 2008 incident, Plaintiff's criminal prosecution, and the

2    conduct of the civil case, and Mr. Sherman is entitled to argue that no such conspiracy exists.

3    Moreover, as is clear from the Court's discussion above, Plaintiff has not shown that Mr. Sherman

4    is involved in any conspiracy to falsify evidence or deceive the Court.

### J. Claim 10

In his tenth allegation, Plaintiff contends that Mr. Sherman attempted to mislead the Court in Defendants' opposition to Plaintiff's motion for leave to file a motion for reconsideration. In his motion, Plaintiff stated that he had first become aware of the *verdict* in *Harper v. City of Los Angeles* a week earlier and then became aware of the Ninth Circuit's *ruling* "a few days ago." Pl.'s Mot. for Leave to File a Mot. for Reconsideration at 3, ECF No. 146. In one sentence of his opposition brief, Mr. Sherman failed to differentiate between Plaintiff's discovery of the verdict and his discovery of the Ninth Circuit's ruling. Defs.' Opp'n to Pl.'s Mot. for Leave to File a Mot. for Reconsideration at 2, ECF No. 151. However, two sentences later Mr. Sherman correctly stated that "Plaintiff knew about the 9th Circuit ruling three/four days prior to the hearing, and of the existence of the *Harper* case approximately one week prior to that." *Id.* Thus, there is no merit to Plaintiff's argument that Mr. Sherman deliberately misquoted Plaintiff in an attempt to mislead the Court and falsely portray Plaintiff.

### K. Claim 11

In his eleventh allegation, Plaintiff claims that Mr. Sherman deliberately attempted to mislead the Court in the same opposition brief by stating that Plaintiff failed to argue the *Harper* case at the April 21, 2011 summary judgment hearing. Mr. Sherman was incorrect in this assertion, as Plaintiff did indeed raise the *Harper* case at the summary judgment hearing. *See* Transcript of April 21, 2011 Proceedings before Judge Koh 55:17-25, 76:5-15, ECF No. 150. However, given that the *Harper* case was mentioned very briefly in the course of a hearing that ran for one hour and 28 minutes, it is quite likely that Mr. Sherman simply made an honest mistake in his opposition brief. In the future, Mr. Sherman should review the hearing transcript before making any claims as to what was or was not raised at a hearing, and the Court will not look

favorably on subsequent errors of this sort. Nonetheless, Plaintiff has presented no reason for the Court to believe that Mr. Sherman's error was a deliberate attempt to mislead the Court.

### L. Claim 12

Plaintiff's twelfth allegation focuses on Mr. Sherman's representation at the summary judgment hearing that he had submitted to the Court a MAV recording in which the DA's office synched Defendant Burger's MAV audio to Defendant Temores's MAV video, thereby creating a single recording in which the March 15, 2008 incident could be both seen and heard. Plaintiff argues that if this is true, Plaintiff was misled as to the evidence presented to the Court for Plaintiff was not provided with the exhibit containing the synched recording. Plaintiff also argues that such a recording, if submitted, could mislead the Court into believing that Temores's MAV video included an audio recording of the incident.

Plaintiff's twelfth allegation is moot because the Court did not receive any synched recording. Mr. Sherman submitted Defendant Burger's MAV video (in which the incident can be heard, but not seen) and Defendant Temores's MAV video (in which the incident can be seen, but not heard). *See* Decl. of Steven A. Sherman ISO Mot. for Summary Judgment, Exs. 14-15. The declaration submitted by Mr. Sherman in support of Defendants' summary judgment motion does not list a synched video as an exhibit, *see id.*, and none was received by the Court. Mr. Sherman was simply mistaken when he represented that a synched video had been submitted. The Court finds it troubling that Mr. Sherman seems to believe that he submitted an exhibit that he did not in fact submit. As lead counsel, Mr. Sherman should be aware of the exhibits submitted in support of Defendants' motions, and the Court admonishes Mr. Sherman that he should take care to remain fully informed of the materials submitted to the Court as this case progresses. Nonetheless, as no synched video was submitted, Plaintiff's claim is moot. The Court is well-aware that Temores's MAV recording lacks audio, as the Court viewed the silent recording of the incident numerous times.

### M. Claim 13

Finally, in his thirteenth allegation, Plaintiff claims that Defendants' counsel Blakney Boggs, acting under the supervision and direction of Mr. Sherman, made false statements in a

11

1   declaration. On April 21, 2011, Judge Grewal ordered Defendants to produce the MAV recordings
2   in the same file type provided to Defendants' expert Warren Page by April 29, 2011. *See* Order
3   Granting Mot. to Compel, ECF No. 144. On April 29, 2011, after conferring with Plaintiff, Ms.
4   Boggs filed a declaration explaining that Defendants would produce the recordings by May 3,
5   2011, as Brian Furtado, a technologist for the Palo Alto Police Department, was on vacation until
6   that date. *See* Decl. of Blakney A. Boggs Re Court Order ¶¶ 10-12, ECF No. 152. In her
7   declaration, Ms. Boggs stated that Mr. Furtado was the only person at the Palo Alto Police
8   Department qualified to produce the information required by Judge Grewal's order. *Id.* ¶¶ 11-12.
9   Ms. Boggs explained that Mr. Furtado had been in communication with Warren Page and handles
10  all court-requested copies of MAV videos. *Id.* ¶¶ 11-12. In his motion, Plaintiff contends that Ms.
11  Boggs employed delay tactics and false statements to justify Defendants' failure to comply with
12  Judge Grewal's order in a timely manner. Plaintiff suggests a number of other individuals at the
13  Palo Alto Police Department who might have produced the MAV recordings in Mr. Furtado's
14  absence. However, Ms. Bogg's April 29, 2011 declaration convincingly explains why each of
15  these individuals was not qualified to produce the recordings in the specific format required by
16  Judge Grewal's order. Ms. Bogg's declaration notes that only Mr. Furtado knew precisely the file
17  format produced to Warren Page and explains that the other individuals lacked experience with the
18  current MAV system. *See* Decl. of Blakney A. Boggs Re Court Order ¶ 16. Indeed, Ms. Boggs
19  even contacted one of the individuals personally to inquire into whether he could produce the
20  required files. *Id.* ¶¶ 17-18. Plaintiff's evidence that Terri Hoang exported MAV video files in
21  2008 and his screenshots showing the job titles of other individuals do not suggest that Ms. Boggs'
22  declaration was a false and unjustified delay tactic. Rather, Ms. Boggs' declaration, written under
23  the supervision of Mr. Sherman, appears to justify the short, 4-day delay to which Plaintiff initially
24  stipulated.

25  **III. Conclusion**

26  Based on the foregoing analysis, the Court finds no misconduct or violation of law
27  committed by attorney Steven Sherman. However, the Court has noted a number of errors made by
28  Mr. Sherman during discovery and motion practice in this case. Based on the evidence submitted,

12
Case No.: 09-CV-02655-LHK
ORDER DENYING MOTION REQUESTING APPROPRIATE ACTION

the Court is persuaded that these errors are the result of honest mistakes and an imperfect understanding of the technology involved in this case.  However, Mr. Sherman is on notice that if the number of errors continues to accumulate, the Court may reach a different conclusion.  Mr. Sherman and Defendants are admonished to pay close attention to detail and to be as accurate as possible in future discovery responses and representations to the Court.

For the reasons discussed above, the Court DENIES Plaintiff's Motion Requesting Appropriate Action Regarding the Law and Rules Committed by Attorney Steven Sherman. However, in order to ensure that Plaintiff has a complete copy of the exhibits to Defendants' motion for summary judgment, Mr. Sherman is ORDERED to produce to Plaintiff a complete and accurate copy of Exhibit 18 to Defendants' motion for summary judgment by July 29, 2011.

**IT IS SO ORDERED.**

Dated: July 21, 2011

_____
LUCY H. KOH
United States District Judge